0781

Delores TAYLOR, Respondent v. JAMES F. BYRNES ACADEMY, INC., Appellant.

(349 S. E. (2d) 888)

Court of Appeals

*Hugh L. Willcox and James C. McLeod, Jr.,* both of *Willcox, Hardee, McLeod, Buyck & Baker,* Florence, *for appellant.*

*Frederick K. Jones,* Florence, *for respondent.*

Heard June 23, 1986.

Decided Aug. 25, 1986.

GARDNER, Judge:

Plaintiff (Taylor) sued the James F. Byrnes Academy, Inc., (the Academy) for conversion of prize money Taylor allegedly won in a bingo game conducted under the auspices of the Academy. The case was tried before a jury which awarded a verdict to Taylor for both actual and punitive damages. We reverse.

The rules of bingo require that the prize be awarded without delay to the first person who achieves the winning configuration of squares. In the case of multiple winners, the rules provide that the prize be equally divided among the multiple winners. The rules also require that the amount of the prize for each game be announced prior to each game and prohibits the announced prize from being subsequently diminished or altered. The rules are set forth in Section 52-17-10 to -60, Code of Laws of South Carolina (1976), as amended.

The bingo game in question occurred on the night of October 8, 1983; the prizes offered amounted to $400,000; approximately 5,000 players were in attendance at the game; some of the players were not seated in the main room in which the bingo game was held but were seated in back rooms outside the view of the bingo game caller; Taylor was seated in one of these rooms. There were approximately 22 television monitors and 100 to 110 ushers or floor attendants working the area. When the numbers were called, they were flashed on the TV monitors for approximately 25 seconds so that all players could view the numbers before the caller announced each one.

The particular game out of which this dispute arises occurred after midnight. Taylor's winning number was I-22. When it was flashed on the monitor, Taylor testified that she began hollering "BINGO" but that there was no usher between the back room and the main hall. Taylor, who has only one leg, and a friend proceeded as quickly as they could to the caller; while they were so proceeding, a female usher

came up to Taylor and asked her to sign the back of the card; Taylor asked the usher to stop the call of the next number. At any rate, another number was called and three others claimed bingo upon the last call.

A conversation then occurred between Taylor and Bob Norman, a representative of the company, CBN Investments, which actually runs the bingo operation for Byrnes Academy. Taylor asserted she was entitled to the $3,000 prize since she was the first to achieve bingo. Norman then offered Taylor $1,500 or nothing. Taylor accepted the proposition and was required to sign a W-2G tax form. Subsequent to that night, Taylor testified that she again demanded the entire prize money, but to no avail.

The complaint in this action summarized the facts above stated, alleged negligence, willfulness, wantonness and recklessness in the refusal to pay her the full prize and sought actual and punitive damages.

The case was tried before a jury on July 27, 1984. At the conclusion of the testimony, the defendant moved to strike that portion of the complaint which alleged negligence, willfulness, wantonness and recklessness in the withholding of the prize money. The Academy argued that the relationship between Taylor and the Academy was a debtor-creditor relationship. The defendant then moved for a directed verdict on the grounds that the refusal to pay the entire prize of $3,000 did not constitute conversion. The trial court denied the motion to strike and also denied the motion for directed verdict, ruling that the facts proved might constitute conversion and additionally might justify punitive damages.

The defendant made post-verdict motions for judgment n.o.v., a new trial absolute and in the alternative a new trial nisi. The Academy moved that these motions be noted as heard and that it be permitted to state the grounds at a later date. Taylor objected to marking the motion heard without stating the grounds for the motion. The trial court observed that it was late Friday night and ruled that he, as trial judge, had jurisdiction to mark the motions heard and to give the defendant 10 days within which to state his grounds, after which the motion would be heard and disposed of. Defendant within ten days served notice of the

grounds upon which the motion was made. Thereafter upon hearing the motions, the trial court ruled that it lacked jurisdiction to hear the motions after adjournment of the term of court since the defendant had, over objection of plaintiff, failed to state the grounds upon which the post-verdict motions were made. Within 10 days of this order, the Academy served notice of intention to appeal.

The issues of merit presented this court are whether (1) this court has jurisdiction (one of Taylor's additional sustaining grounds) and (2) whether the refusal to award prize money at a bingo game may be the basis of a conversion action.

With respect to the jurisdiction of this court, we conclude that this issue has been disposed of by the Supreme Court.

By way of review, Taylor opposed the trial judge's ruling that the Academy's post-verdict motions be marked heard without the grounds being stated before the adjournment of the term on July 27, 1984. On August 20, 1984, the trial judge sustained Taylor's position and found "this court lost jurisdiction after the adjournment of the term." The Academy did not serve and file its notice of intent to appeal until August 27, 1984, a month after the adjournment of the court, but only seven days after the August 20, 1984, order.

Taylor moved to dismiss the Academy's appeal based upon the ruling in the case of *Harlan v. Satterfield Construction Co.*, 257 S. C. 69, 184 S. E. (2d) 339 (1971). The Supreme Court, without stating reasons, refused to dismiss this appeal. Since Taylor raises this issue by an additional sustaining ground, we briefly address it although we are bound by the Supreme Court decision.

*Harlan* dealt with the jurisdiction of the Court of Common Pleas over post-verdict motions marked heard during the term but actually heard after the adjournment of the court term. *Harlan* holds that post-verdict motions marked heard, but without the stating of the grounds upon which the motions are made, to which opposing counsel objects, are without the jurisdiction of the Court of Common Pleas after adjournment of the court term; the court based this ruling upon Section 15-33-110, Code of Laws of South Carolina (1976), (Section 10-1461 of the 1962 Code), which deals with the jurisdiction of the Court of Common Pleas. The situation

in *Harlan* is the exact situation presented in this case as to the post-verdict motions; but this case differs from *Harlan* in that here the appellant appeals from the judgment and not from the ruling on the post-verdict motions. In *Harlan* there was no appeal from the judgment but only from the rulings made after the term of court on the post-verdict motions. Stated differently in *Harlan* the issue was whether the post-verdict motions should be reversed. In the case before us issues occurring during the trial are appealed and there is no appeal from the ruling on the post-verdict motions. The issue here is the jurisdiction of the Supreme Court and not the jurisdiction of the Court of Common Pleas as in *Harlan.*

The jurisdiction of the Supreme Court is controlled by
■ Section 18-9-60, Code of Laws of South Carolina (1976)[1] which provides, *inter alia:*

*[P]rovided,* that whenever a motion for a new trial upon the judge's minute shall have been made and the decision thereon not be both heard and filed at the term at which the trial is had, the notice of intention to appeal either from the judgment or the order granting a refusal of a new trial shall be given to the opposite party or his attorney within 10 days after receipt of written notice that such order has been granted or rendered. [Emphasis ours.]

It was, we think, perforce of South Carolina Supreme Court Rule 1, Section 1 A and Section 18-9-60, that the Supreme Court in this case refused Taylor's motion to dismiss the appeal.

Next we address whether the facts of this case give
■ rise to a conversion action. We hold they do not.
While the exact question has been decided by our Supreme Court, other authorities are uniform in holding that an action arising from the failure to award a prize in gaming and prize contests give rise only to an *ex contractu* action.

---

[1] Repealed by Act No. 100, Acts and Joint Resolutions of the General Assembly of South Carolina, 1985; preserved in South Carolina Supreme Court Rule 1, Section 1 A. *See Mears v. Mears,* 287 S. C. 168, 337 S. E. (2d) 206 (1985).

An extensive annotation of authorities pertaining to prize contests is contained in 87 A.L.R. (2d) 649 (1963), wherein the general rule is summarized at page 661 as follows:

### III. Lawful contests
Section 7. Generally; formation of contract.

The general rule of the law of contracts that where an offer or promise for an act is made, the only acceptance of the offer that is necessary is the performance of the act, applies to prizewinning contests. The promoter of such a contest, by making public the conditions and rules of the contest, makes an offer, and if before the offer is withdrawn another person acts upon it, the promoter is bound to perform his promise.

This rule is corroborated by encyclopedic authority. *See* 38 Am. Jur. (2d) *Gambling* Section 267 (1968).

For the foregoing reasons, we hold the trial court erred in not directing a verdict for the Academy because the facts alleged and proved do not give rise to an action for conversion. We therefore reverse.

Reversed.

GOOLSBY and MENDENHALL, JJ., concur.